**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

**CHARLES E. ROBERTS,**

      **Plaintiff,**

**v.**                                      **Case No. 2:15-cv-15458**

**DAVID BALLARD, in his official capacity
as the Warden of Mount Olive Correctional Complex (MOCC);
DR. JEAN KENNEDY, D.D.S, individually and
in her official capacity as MOCC dentist;
KATHI HILL, individually and
in her capacity as dental assistant at MOCC;
MARY BETH SHEA, individually and
in her official capacity as dental hygienist at MOCC;
JANE DOE and/or JOHN DOE, dental and/or medical personnel at MOCC,
number of an[d] identities of whom are presently unknown,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are the following motions: a Motion to Dismiss filed by defendant David Ballard (ECF No. 12) and a Motion to Dismiss filed by defendants Dr. Jean Kennedy, Kathi Hill and Mary Beth Shea (collectively referred to as "the dental defendants"). (ECF No. 14).

## THE PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

On November 23, 2015, the plaintiff Charles E. Roberts (hereinafter 'Roberts") filed a Complaint under 42 U.S.C. § 1983, asserting claims of deliberate indifference to a

serious medical need by the defendants concerning his dental care and treatment of pain, and conspiracy to cover up the same.  The 25-page Complaint, which includes an additional 31 pages of attached exhibits, addresses Roberts' treatment for dental issues during a one-month period in June-July of 2015.

Specifically, Roberts alleges that, on May 26, 2015, he began experiencing lower right jaw pain and was having difficulty eating and sleeping as a result thereof.  (ECF No. 2, ¶ 10).  Consequently, between May 28, 2015 and June 1, 2015, he allegedly purchased from the prison commissary and liberally ingested one box of 250 mg tablets of acetaminophen and one box of 200 mg tablets of ibuprofen, each of which contained 24 tablets.  (*Id.*, ¶¶ 11-12, 14).

On June 1, 2015, Roberts submitted a sick call request stating that he believed he had an abscess.  (*Id.*, ¶ 15).  On June 2, 2015, he was taken to the dental clinic where he was examined by Dr. Jean Kennedy ("Kennedy"), the contracted dentist at MOCC, and Kathi Hill ("Hill"), her dental assistant.  He explained to them the type of pain he was having and the remedies he had attempted.  (*Id.*, ¶¶ 15a-17).

After ordering and reviewing radiographs, Kennedy diagnosed the pain as resulting from periodontal erosion and determined that the plaintiff potentially needed three teeth extracted.  (*Id.*, ¶ 18).  The Complaint asserts that Roberts disagreed with Kennedy's diagnosis, stating that the aching was coming from the base of his teeth or his jawbone, but he "acceded" thereto.  (*Id.*, ¶ 19).  At that time, Kennedy extracted Roberts' #25 tooth.  (*Id.*, ¶ 20).

Roberts requested prescription pain medication and when he returned to his housing unit, he asked his unit manager to contact the dental clinic to inquire about such medication.  The unit manager was allegedly told by "Mary Beth" (whom Roberts believes

to be defendant Mary Beth Shea ("Shea"), a dental hygienist) that Roberts could not obtain such pain medication because it was not prescribed in his dental chart, and that he would have to purchase his own medication from the commissary.  (*Id.*, ¶¶ 20-28).  Roberts further alleges that Shea did not even check with Kennedy or anyone else about such medication, and that Kennedy, Hill and Shea were "complicit in formulating and implementing the dental clinic's unconstitutional practices, procedures and customs" such as leaving inmate patients to purchase their own medication in an effort to cut costs. (*Id.*, ¶ 29).

Roberts alleges that his pain continued to increase; thus, on June 3, 2015, and June 10, 2015, respectively, he purchased and ingested two more bottles of ibuprofen.  (*Id.*, ¶¶ 30-31, 33).  On June 10, 2015, he submitted another sick call request, complaining of increased pain.  (*Id.*, ¶ 33).  On June 11, 2015, Kennedy again examined Roberts and ordered more radiographs.  At that time, she advised Roberts that extraction of the #26 tooth was required and that extraction of the #24 tooth was likely to follow.  (*Id.*, ¶ 35).  Roberts alleges that he again told Kennedy and Hill that the pain seemed to originate from beneath his teeth and that he felt a protrusion coming through his gum next to the #29 tooth (as determined from his dental progress history charts).  (*Id.*, ¶ 36).  Kennedy proceeded to extract tooth # 26.  (*Id.*, ¶ 40).

Roberts further alleges that on June 11, 2015, he informed Kennedy and Hill of the amount of over the counter pain reliever he was taking, but neither seemed alarmed.  (*Id.*, ¶ 37).  Rather, after denying Roberts' requests for "Loritab [sic; Lortab] or some other medicine to be issued through the nurse's pill dispensing window which would be effective in diminishing his pain," Kennedy issued Roberts two bubble sheets of 30 pills consisting of 500 mg penicillin pills, and 400 mg ibuprofen tablets.  (*Id.*, ¶ 39).  Roberts alleges that

Kennedy was "visibly angered" and had a "hostile demeanor" towards him.   (*Id.*)
Nevertheless, Kennedy told him to contact the clinic the following day if he was still in
pain.  Roberts further alleges that Kennedy should have "reasonably foreseen" that taking
two 400 mg tablets of ibuprofen every six hours, as she directed, would be ineffective, and
that he was in so much pain that night, he did not sleep.  Seeing no alternative, Roberts
took 28 of the 30 ibuprofen tablets and either ingested them or diluted them with water
and rubbed it on his gums.  (*Id.*, ¶¶ 40-41).

The following day, Roberts requested to return to the dental clinic.  When he
informed Kennedy and Hill about the amount of ibuprofen he has consumed, Kennedy
became alarmed and consulted the medical clinic.  A nurse subsequently drew blood from
Roberts for a blood test, which showed high levels of glucose and creatinine and allegedly
demonstrated kidney damage attributed to Roberts' ingestion of so many analgesics.  He
further alleges that defendant Kennedy directed security to "shake down" the plaintiff's
cell for evidence of medication abuse and a disciplinary violation was subsequently issued.
(*Id.*, ¶ 48-49).  Roberts alleges that Kennedy also put entries in his dental and medical
charts that would prevent him from obtaining pain medication in the future.  (*Id.*, ¶ 49).

On June 12, 2015, after Roberts again pinpointed his pain to be coming from below
tooth #29, Kennedy extracted that tooth and discharged Roberts without any pain
medication.  (*Id.*)  He alleges that, following the extraction of the third tooth, his pain
continued to escalate. (*Id.*, ¶ 53).[1]  His Complaint further states:

> It had become apparent by how the pain would escalate after each tooth
> extraction that pulling the teeth caused the source of the aching to be
> irritated and made it hurt worse.  Dr. [Kennedy] appeared to have made her
> initial diagnosis on June 2 and her interpretations of the radiographs and

---

[1] Roberts further alleges that the prison was on lockdown from June 12-16, 2015, and that those days were
"especially tortuous [sic; torturous]" because his pain had not subsided after the third tooth extraction.  (*Id.*,
¶ 59).

visual examinations allowed her to maintain periodontal decay was the
cause of the pain.  This diagnosis followed the "pull first" custom which the
MOCC prison dental clinic often implemented.

(*Id.*)

Roberts further alleges that, on June 13, 2015, he completed another sick call
request seeking pain medication, which he labeled "EMERGENCY."  He also contends
that, during the lockdown, he repeatedly sought help from prison staff and nursing
personnel who walked passed his cell.  (Id., ¶ 60).  He was allegedly informed by "senior
[prison] staff" that he was being refused pain medication because he had abused the
issued ibuprofen.  (*Id.*, ¶ 61).  Roberts acknowledges that, on June 14, 2015, a nurse gave
him "two (2) brown tablets (which he believed to be Motrin), but that did not significantly
ease his pain.  (Id., ¶ 61).  He maintains that he "was never given any other treatment for
his suffering and his [sick call request] was ignored by the dental clinic."  (*Id.*)

On June 17, 2015, Roberts filed another grievance concerning his dental pain and
requested to see another dentist.  (*Id.*, ¶ 63).  On June 23, 2015, Dr. Charles Lye, the
facility physician, examined Roberts in the medical clinic and showed him lab reports that
evidenced severe damage to his kidneys.  (*Id.*, ¶ 66).[2]  Roberts further alleges that Dr. Lye
refused to issue him any pain medication due to his kidney damage and Kennedy's entries
about medication abuse in his chart.  (*Id.*, ¶¶ 66-67).  Roberts alleges that Dr. Lye told
him he would have to "soldier" through without more analgesics in an attempt to allow
his kidneys to "self repair."  (*Id.*, ¶ 68).  Roberts further contends that Dr. Lye stated that
Kennedy "should have" prescribed more effective pain medication that would not have
hurt his kidney.  (*Id.*)

---

[2]  According to Roberts, Dr. Lye told him "You've killed half your kidney."  (*Id.*, ¶ 66).

Roberts further alleges that Kennedy examined him again on July 1, 2015.  Upon Roberts' additional complaints about something sharp protruding through his gum, Kennedy found and "shaved down" a protrusion from beneath his gum and "wrenched on" his jawbone, which she described "to be at a bad angle."  The plaintiff alleges that this caused the pain to recede "completely" by the next day.  (*Id.*, ¶¶ 71-73).

Roberts further alleges that he was scheduled for follow-up blood work on July 17, 2015, which did not occur.  However, upon later reviewing his medical records, he alleges that he discovered a July 9, 2015 lab report, ordered by Dr. Lye, indicating that his glucose and creatinine levels had normalized.  Roberts denies that he had any blood drawn at that time that would have resulted in this report.  Consequently, he asserts that this was a "false test result" created to "minimize the damage to the kidneys" and to "ameliorate the responsibility of the caretakers in the dental clinic" for essentially allowing his alleged ibuprofen abuse.  (*Id.*, ¶¶ 75-78).

Count I of the Complaint, which is titled "42 U.S.C. § 1983 Conspiracy," alleges that the dental defendants "conspired with one another, the warden of MOCC, and unknown medical person(s) in the medical clinic at MOCC to formulate, implement and practice customs, policies and procedures at MOCC which injure, oppress and intimidate Charles Roberts; and also to retaliate and obscure the harm caused against Charles Roberts."  (*Id.*, ¶¶ 80-87).  Count II of the Complaint alleges that the defendants denied him adequate medical treatment in violation of the Eighth Amendment's guarantee against cruel and unusual punishment.  (*Id.* at 22-23, ¶¶ 88-90).  Count III of the Complaint alleges a claim of supervisory liability against Warden David Ballard based upon his failure to intercede to get Roberts help for his pain.  (*Id.*, ¶¶93-94).  Further details of each of these counts

will be discussed *infra*.  Roberts seeks various forms of declaratory and injunctive relief and monetary damages.  (*Id.* at 24-26).

Attached to the Complaint are 31 pages of exhibits, consisting of excerpts from Roberts' medical and dental records and documents related to a complaint that Roberts filed against defendant Kennedy with the West Virginia Board of Dentistry.  (ECF No. 2, Attach. 1).

On June 30, 2016, defendant Ballard filed a Motion to Dismiss (ECF No. 12) and a Memorandum of Law in support thereof (ECF No. 13).  That same date, defendants Kennedy, Hill and Shea also filed a Motion to Dismiss (ECF No. 14) and a Memorandum of Law in support thereof (ECF No. 15).  Roberts responded to both motions on July 14, 2016 (ECF Nos. 17 and 18).  No reply briefs were filed.  Accordingly, these motions are now ripe for adjudication.

## STANDARD OF REVIEW

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.   However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.  The Court wrote:

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79. Additionally, a court may consider documents attached to the complaint or the motion to dismiss without converting the motion to one for summary judgment, so long as the documents are integral to the complaint and authentic. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Corbett v. Duerring*, 780 F. Supp.2d 486 (S.D. W. Va. 2011). The defendants' motions will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

The plaintiff's Complaint is filed pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

8

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Before addressing the specific claims alleged in the Complaint, the undersigned will touch on the element of whether the defendants herein were acting under color of state law.

<u>*Acting under color of state law*</u>

The defendants named in the Complaint are David Ballard, the Warden of MOCC, who, as a state employee, is considered to have been acting under color of state law at the time in question. However, the remaining defendants are allegedly employees of Wexford Health Sources, Inc. (hereinafter "Wexford"), a private company who has a contract with the State of West Virginia to provide medical and dental treatment to the West Virginia Division of Corrections' inmates.[3] The Supreme Court has acknowledged that "contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West*, 487

---

[3] Although the allegations in the Complaint do not specifically assert that the dental defendants are employed by Wexford, the attachments thereto include a response by defendant Dr. Jean Kennedy to a complaint filed by Roberts with the West Virginia Board of Dentistry. ECF No. 2, Attach. 1, Ex. 1f). The letter is drafted on Wexford letterhead. Accordingly, it appears that the dental defendants are employed by Wexford.

U.S. at 56; *see also Lynch v. Wexford Health Sources, Inc.*, Case No. 2:13-cv-01470 (S.D. W. Va., May 20, 2016), ECF No. 18 at 10-11.

In accordance with *West*, the United States Court of Appeals for the Fourth Circuit has held that:

> Regardless of the physician's employment relationship with the state, any physician authorized by the state to provide medical care to a prisoner exercises power that is traditionally the exclusive prerogative of the state.  If the physician abuses this power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law - not because the state has employed a bad physician, but because the state has incarcerated the prisoner and denied him the possibility of obtaining medical care on his own.

*Conner v. Donnelly*, 42 F.3d 220, 225 (4th Cir. 1994) (citing *West*, 487 U.S. at 55); *see also Johnson v. Karnes*, 398 F.3d 868, 876 (6th Cir. 2005) ("[P]rivate physicians serving inmate populations satisfy the state-action requirement of [§ 1983].")  Consequently, the dental defendants, and any identified medical providers who may be named as defendants herein, are appropriately considered to have been acting under color of state law for the purposes of this civil action brought under section 1983.

## *Eighth Amendment deliberate indifference claims*

Roberts' Complaint alleges that the defendants were deliberately indifferent to his serious medical needs, a claim generally addressed under the cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution, which is applicable to prisoners, such as Roberts, who have been convicted and sentenced.  In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures

to guarantee the safety of the inmates.'"  The Supreme Court emphasized, however, that "[p]rison conditions may be 'restrictive and even harsh.'"  *Id.* at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) a deprivation that is, objectively, "sufficiently serious" (that is, one that results in the "denial of 'the minimal civilized measure of life's necessities'"); and (2) that a defendant had a "sufficiently culpable state of mind" (that is, "'deliberate indifference' to inmate health or safety").  *Id.* at 834.  The Supreme Court rejected an objective test for deliberate indifference.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.  Thus, a defendant is not liable under the Eighth Amendment unless he or she knew of and disregarded an excessive risk to inmate health or safety.  *Id.* at 847. Negligence will not suffice.  Furthermore, prison officials are entitled to rely upon the professional judgment of trained medical personnel.  *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).  Thus, to establish a claim of deliberate indifference against non-medical prison personnel, such as defendant Ballard, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. *Miltier*, 896 F.2d at 853.[4]

---

[4]  The undersigned will discuss additional authority concerning deliberate indifference by a healthcare provider in the section concerning the dental defendants' Motion to Dismiss.

### A.    Defendant Ballard's Motion to Dismiss.

The Complaint indicates that defendant Ballard is sued in his official capacity as the Warden of MOCC.  The "Factual and General Allegations" section of the Complaint contains no specific factual allegations concerning Ballard's conduct.  However, the "Causes of Action" section of the Complaint generally asserts that defendant Ballard conspired with the medical staff to "injure, oppress, and intimidate" Roberts.  (ECF No. 2 at ¶ 81).  The Complaint further summarily alleges that Ballard was aware of Roberts' situation through grievances and communications from his wife, yet failed to intervene. (*Id.*, ¶ 94).

Defendant Ballard's Motion to Dismiss asserts that the Complaint fails to state a plausible claim against him.  His Memorandum of Law contends that the allegations in the Complaint concerning him "are entirely conclusory and form like recitals of the legal elements" and are "without one single supporting fact that can lead this Court to conclude that the Plaintiff's claims for supervisory liability and civil conspiracy are plausible, as opposed to merely 'possible.'"  (ECF No. 13 at 5).

Ballard's motion documents construe the claims against him as being brought in his supervisory role as the Warden.  In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Fourth Circuit held that supervisors may be liable for the actions of their subordinates where the supervisor, *by his own conduct*, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  *Id.* at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  As further noted by the court in *Evans v. Chalmers*:

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor can only be held liable for "his or her own misconduct."  [556 U.S. at 677.]

703 F.3d 636, 660-61 (4th Cir. 2013); *see also King v. Rubenstein*, 825 F.3d 206, 224 (4th

Cir. 2016).

> Ballard's Memorandum of Law asserts:

> Here, Plaintiff can prove no set of facts sufficient to establish supervisor liability.  Plaintiff's Complaint only provides that Warden Ballard should have known about the alleged conduct due to inmate grievances and complaints via letters and telephone calls from Plaintiff's wife.  Once again, the Supreme Court requires actual knowledge on the part of supervisors.  Plaintiff's Complaint does not indicate what information was given to Defendant Ballard through the alleged letters and calls from his wife or that the letters and calls were even received by Defendant Ballard.  The only factual allegation regarding his wife calling Mount Olive involved a conversation with Associate Warden Theresa Gregory, not Defendant Ballard.  Therefore, because Plaintiff cannot meet even the first element of the *Shaw* test, Plaintiff's claim of supervisory liability against Defendant Ballard should be dismissed.  Furthermore, Plaintiff has failed to show a causal link between Defendant Ballard's alleged inaction and his Constitutional injuries.  Plaintiff's Complaint is completely devoid of any dates or ranges of dates when Defendant Ballard was allegedly informed of the violative conduct.  As a result, no link can be made to the alleged knowledge and inaction to when the Constitutional injury actually took place.  Therefore, Plaintiff's claim of supervisory liability against Defendant Ballard should be dismissed with prejudice.

(ECF No. 13 at 10-11).

Ballard further asserts that, in his official capacity, he is not a person who is suable

under section 1983 and he is entitled to Eleventh Amendment immunity on the plaintiff's

claims for damages.  (*Id.* at 5-6).  As noted in Ballard's Memorandum, in *Will v. Michigan*

*Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State

nor its officials acting in their official capacities are 'persons' under § 1983."  Furthermore,

pursuant to the Eleventh Amendment to the United States Constitution, the power of the

federal judiciary does not extend to suits by a citizen of one state against another, or to

suits by a citizen against his or her own state.  *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).

Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, waiver, or abrogation of such immunity by Congress, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

On July 14, 2016, Roberts filed a "Response in Agreement to Defendant's Motion to Dismiss" (ECF No. 17) in which he agrees to the dismissal of Warden Ballard as a defendant in this matter.  Although Roberts maintains that the Warden has the ultimate responsibility for his care, he acknowledges that his allegation that the Warden received his grievances is insufficient to establish the element of actual knowledge necessary to state a claim of deliberate indifference or failure to intervene under the Eighth Amendment, and he cannot demonstrate that Ballard was personally informed despite his wife's attempts to communicate with Ballard.  (*Id.* at 1-2).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the parties agree that the plaintiff's allegations against defendant Ballard do not state a facially plausible Eighth Amendment claim and, thus, the Complaint fails to state a claim upon which relief can be granted against him.

### C.    The Motion to Dismiss filed by the dental defendants.

Defendants Kennedy, Hill and Shea have also moved to dismiss the Complaint on the basis that it fails to state a plausible claim of deliberate indifference to a serious medical need, or civil conspiracy arising therefrom, and because the plaintiff has failed to

comply with the pre-requisites of the Medical Professional Liability Act ("MPLA"), W. Va. Code §§ 55-7B-1 *et seq.*

     "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852. The burden of demonstrating deliberate indifference to a serious medical need is difficult. It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, **or a condition for which lack of treatment perpetuates severe pain**. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978). [Emphasis added]

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Corr. Ctr. Med. Dep't*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).

     Disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference

claim, and questions of medical judgment are not subject to judicial review.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).  As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate.  *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

The dental defendants' Memorandum of Law asserts that the plaintiff's Complaint neither pleads nor meets the legal threshold for a viable deliberate indifference claim. (ECF No. 15 at 2, 5-11).  Their Memorandum of Law asserts that Roberts' allegations and the exhibits attached to the Complaint demonstrate that the plaintiff received appropriate treatment and that he simply disagrees with the diagnosis and treatment plan, which, they assert, fails to establish a constitutional violation.  *See Russell v. Sheffer*, 528 F.2d at 319. (*Id.*)

At the outset, the dental defendants assert that the alleged conduct of defendants Hill and Shea fails to rise to the level of a constitutional violation.  Roberts alleges that Hill, a dental assistant, was present during his examinations and treatment by Kennedy, and allegedly witnessed his statements that he continued to be in extreme pain and had ingested a great deal of ibuprofen.  However, he does not allege that she provided him with any actual medical or dental treatment.  Likewise, Roberts does not allege that Shea, a dental hygienist, treated Roberts.  Rather, he merely alleges that she took a phone call from his unit manager and advised her that Roberts could not receive prescription pain medication because it was not prescribed in his chart.  The dental defendants assert that neither Hill, nor Shea, could prescribe such medication.  Thus, they contend that any

claim that they were deliberately indifferent to Roberts' requests for prescribed medication must fail.  (*Id.* at 2-5).

The dental defendants' motion documents further assert that the allegations against defendant Kennedy also fail to state claim of deliberate indifference.   Their Memorandum of Law states in pertinent part:

> It is clear from the recitation above taken from the Complaint, progress notes and Dr. Kennedy's response to the Board of Dentistry, that over the course of a month, Dr. Kennedy responded to the complaints of Mr. Roberts with an examination, x-rays and appropriate treatment.  Other than simply "pull first," Dr. Kennedy took a conservative approach of separate extractions in the hope that each extraction would ease Mr. Roberts' complaints of pain.  Her only transgressions, at least as seen by Mr. Roberts, were her refusal to give Mr. Roberts narcotic medication and to report Mr. Roberts for his abuse of the prescription for pain medication she did give him.

(*Id.* at 10).   The memorandum further asserts that this matter simply involves a disagreement between Roberts and the defendants who, in their medical judgment, believed that his treatment was appropriate.  (*Id.* at 10-11).  Thus, the dental defendants assert that the Complaint wholly fails to establish an Eighth Amendment violation.

Roberts' Response to the dental defendants' motion asserts that, during the telephone call with his unit manager, defendant Shea, "of her own volition," instructed Roberts to buy medication from the commissary and thereby "supported and enforced a dental [clinic] custom and policy which violates the US Constitutional 8th Amendment by leaving inmate patients in unnecessary pain."  (ECF No. 18 at 2).  His Response further states:

> Her individual decision not to ask the dentist or the dental assistant if perhaps a failure to prescribe pain medication had occurred demonstrates [Shea] already knew the customary practice of the MOCC dental clinic.  A custom of extracting teeth and issuing no pain medication, but rather to instruct the inmate patient to buy medicine from the inmate store. Although this is, in fact, a single event [Shea] was involved in, she firmly

> closed the only door for plaintiff to receive help with his pain.  The only
> course let after this act by [Shea] was a several day process of submitting a
> new medical request.

(*Id.* at 2-3).  In essence, Roberts alleges that Shea was "the gatekeeper" during this incident and, thus, she "placed herself into the role of plaintiff's caregiver and is liable for the direct violation of his 8th Amendment rights."  (*Id.* at 3).

Likewise, Roberts' Response asserts that defendant Hill was "integral to his failure to receive effective pain relief despite his complaints individually and directly to her as she prepped [him] for dental procedures."  (*Id.* at 4).  Roberts again argues that the dental clinic maintains a custom and policy of not providing effective pain relief, which, he asserts, is evident from Hill's conduct.  (*Id.*)

Roberts' Response further asserts that he has alleged "in multiple paragraphs that his medical need was relief from the pain he was suffering" and "he informed the defendants in writing that he was suffering from pain which was 'as bad as he had ever before felt'" and caused "his inability to chew food" and his "lack of sleep."  (*Id.* at 5, citing Ex. 3a).  Roberts maintains that the dental defendants "purposefully and deliberately blocked plaintiff's efforts to obtain relief for his severe pain . . . ."  (*Id.* at 5).  He contends that such facts establish an Eighth Amendment violation because they demonstrate the "unnecessary and wanton infliction of pain."  *Rhodes v. Chapman*, 452 U.S. at 347.  (*Id.*) His Response further contends:

> After extracting the first of three teeth, plaintiff was sent back to his
> housing unit with no medication at all.  Plaintiff alleges in pl. comp.
> paragraph 29 that "[Shea] did not put down the phone and ask the dentist
> or anyone else about plaintiff's medication," and "[Shea] already knew the
> response to give" as plaintiff alleges [Shea] placed herself into the role of
> direct caregiver by failing to ask the dentist if plaintiff should have been
> issued some medication.  Plaintiff's Complaint thus alleges [Shea] is
> indifferent in keeping plaintiff from obtaining relief from the pain.  (See pl.
> comp. paragraph 24-29).

When plaintiff was dismissed from the dental clinic on June 12, 2015, it was again without any medication for pain following a tooth extraction. On June 13, 2015, plaintiff submitted a sick call request with "EMERGENCY" written across the top of it. This request for help with his pain was completely ignored by medical and dental staff. Plaintiff alleged (in pl. comp. paragraph 60-63) he was given no response or treatment to this acknowledged request for help with his hurting.

From June 12, 2015 until July 1, 2015, plaintiff was left completely untreated, other than one dose of motrin by a sympathetic nurse for the unrelenting pain in his face and jaw. Even if defendants foment a baseless theory that plaintiff was trying to obtain narcotic pain medicine (which they cannot prove or support in light of plaintiff's documented medical/dental history at MOCC) or that medicine couldn't be trusted in plaintiff's possession after he ingested too much ibuprofen, defendant [Kennedy] had a means to issue pain medication under observation and supervision a dose at a time. (See pl. comp. exh. 1f).

(*Id.*)

"A constitutional violation . . . is established when government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." *Morales Feliciano v. Calderon Serra*, 300 F. Supp.2d 321, 341 (D.P.R. 2004). Here, Roberts alleges that the defendants (particularly defendant Kennedy) failed to properly and effectively treat a condition causing severe pain, which significantly affected his daily life activities. Thus, the undersigned proposes that the presiding District Judge **FIND** that he has plausibly alleged a serious medical need.

Although the face of the Complaint and the records attached thereto demonstrate that defendant Kennedy treated his dental problems over the course of the one-month time period in question, Roberts alleges that Kennedy ignored his repeated complaints

concerning the source and intensity of his pain and provided ineffective treatment therefore.   Courts have held that dismissal of an Eighth Amendment deliberate indifference claims is improper where the plaintiff received some, or perhaps even extensive treatment, but the treatment that was provided ignored and failed to treat his symptoms.  *See, e.g., De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (rejecting an argument that provision of "*some* treatment" necessarily rendered a deliberate indifference claim legally insufficient because such treatment may not be "*constitutionally adequate* treatment").  Therefore, a plaintiff may establish a plausible Eighth Amendment claim if he can demonstrate that "the care he is receiving is not effective."  *Goodman v. Johnson*, 524 F. App'x 887, 889 (4th Cir. May 3, 2013).

"On closer inspection, [Roberts' allegations may] amount to nothing more than a prisoner's disagreement with his diagnosis or prescribed treatment" *Goodman*, 524 F. App'x at 889.  Nevertheless, at this stage of these proceedings, where the court must liberally treat his factual allegations as true, the undersigned proposes that the presiding District Judge **FIND** that the Complaint sufficiently states a plausible Eighth Amendment claim of deliberate indifference to a serious medical need against Dr. Jean Kennedy, the treating dentist.  However, the undersigned further proposes that the presiding District Judge **FIND** that Roberts' allegations against defendants Kathi Hill and Mary Beth Shea, who are not alleged to have directly provided any treatment to Roberts, and who are not authorized to prescribe pain medication, fail to give rise to a claim of deliberate indifference to a serious medical need that advances from the level of "possibility" to one of "plausibility."

*Civil conspiracy claim*

Roberts' Complaint also asserts that the dental defendants conspired with unidentified medical personnel to cover up the record demonstrating the effects of the alleged indifferent treatment by defendant Kennedy.  To establish civil conspiracy under section 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some act was done in furtherance of the conspiracy, which resulted in the deprivation of the plaintiff's constitutional rights.  *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996); *see also Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992).

Count I of Roberts' Complaint alleges that the defendants "initially misdiagnosed the source of plaintiff's pain and refused to alter course from this initial misdiagnosis." (ECF No. 2 at 20, ¶ 83).  The Complaint further alleges that the defendants did not want to issue effective pain medication due to inconvenience or cost, and that they retaliated against Roberts for "angering" Kennedy by repeatedly asking for such medication.  (*Id.*, ¶¶ 84-85).  The Complaint further alleges that, if the defendants were worried about Roberts' abuse of pain medication or potential "drug-seeking" (which he contends had never before been an issue), they could have ordered that such medication be provided under the observation of a nurse.  Instead, Roberts alleges, they elected not to follow such procedures and "conspired to prevent and block [him] from obtaining treatment from any other source available.  (*Id.*, ¶ 86).

In further support of his conspiracy claim, Roberts alleges that Kennedy intentionally placed entries in his charts concerning his abuse of analgesics that 'would lead any future caretaker to question [his] honesty about his need for medicine for pain." (*Id.*, ¶ 87a).  Roberts further relies upon a July 9, 2015 lab report (attached to his

Complaint as Ex. 6c) indicating that blood work completed on that date showed that his glucose and creatinine levels, which had been elevated on June 12, 2015, had returned to within normal levels.  (ECF No. 2, ¶ 87b and Attach. 1, Ex. 6c).  Roberts denies having blood drawn on July 9, 2015, and further contends that this report was "falsified" in an effort to "cover up" the effects of the failure to provide him with effective pain medication. (*Id.*)  Roberts further summarily alleges that the defendants knew that ibuprofen would not be effective against his pain and intentionally put him in a position to use more medication than directed, which resulted in kidney damage, a facility rule violation, and the further denial of effective pain medication.  (*Id.*, ¶¶ 87c and d).

The dental defendants' motion documents do not specifically address this claim. However, their Memorandum of Law touches on Roberts' allegations that Kennedy intentionally placed entries about medication abuse in his files and his allegation that Kennedy's conduct resulted in a disciplinary infraction and the further denial of any effective pain medication.  The Memorandum states:

> As Mr. Roberts was in prison and subject to the rules of the facility, Dr. Kennedy had to report Mr. Roberts' misuse of the KOP [Keep On Person medication] to the appropriate authorities.  Mr. Roberts was disciplined as a result thereof.  In addition, Dr. Kennedy made a notation in her chart of his abuse of the prescription for pain relief.  As a result, Mr. Roberts was not able to ever successfully obtain narcotic medication which was his apparent goal throughout this process.  Defendants would submit that Mr. Roberts' motivation in bringing the case at bar is to retaliate against Dr. Kennedy and others for his self-inflicted violation and resulting [] punishment.

(ECF No. 14 at 8).

Roberts' Response to the dental defendants' motion contains one conclusory statement concerning his conspiracy claim stating, "defendants, in collusion with Jane Does and/or John Does in the MOCC medical clinic, conspired to engage in retaliatory conduct against plaintiff and in covering up the record of the effect of the alleged

22

indifferent treatment on the plaintiff."  (ECF No. 18 at 1).  However, Roberts' Response fails to offer any further support for this claim.

Even taking all of his allegations as true, and even if he can ultimately establish Eighth Amendment liability against defendant Kennedy, the undersigned proposes that the presiding District Judge **FIND** that Roberts has not sufficiently established concerted conduct by the defendants, identified or not, that could support a plausible conspiracy claim.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that this claim against all of the defendants, including the Jane and John Does, is appropriate for dismissal.

*Negligence/medical malpractice claims*

The dental defendants' motion documents also assert that, to the extent that Roberts' Complaint could allege that their conduct constitutes negligence or medical malpractice, which does not rise to the level of a constitutional violation, it is undisputed that Roberts has failed to satisfy the pre-requisites of the West Virginia Medical Professional Liability Act ("MPLA"), specifically, W. Va. Code § 55-7B-6(b), requiring pre-suit notification and a screening certificate of merit.  *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006).  (ECF No. 16 at 11-12).  However, Roberts' Response clarifies that he is not asserting a negligence or medical malpractice claim, stating:

> With respect to defendants' claim that plaintiff failed to comply with the West Virginia Professional Liability Act before filing his complaint plaintiff is required, as a prisoner, to exhaust his internal facility remedies through all levels of the facility grievance process which satisfies the PLRA requirement of 42 USCS § 1997(e).  Plaintiff submitted his required grievance (see pl. comp. ex. 4a) and processed it through the WV DOC Commissioner's office.  Plaintiff has filed a constitutional rights claim for defendants knowing he was in pain and refusing to actually treat the pain, thus exhibiting deliberate indifference to his suffering which served no

> penological purpose.  Plaintiff did not file a medical malpractice or medical negligence claim against defendants which perhaps would require compliance with MPLA of the West Virginia statute.

(ECF No. 18 at 7).  Thus, the undersigned believes that the Complaint should be construed to only be raising claims arising under the federal constitution and, therefore, it is unnecessary to further address this state law issue.

## RECOMMENDATIONS

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that presiding District Judge **GRANT** the Motion to Dismiss filed by defendant Ballard (ECF No. 12).  It is further respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by defendants Kennedy, Hill and Shea (ECF No. 14), with respect to the Eighth Amendment claims against defendants Hill and Shea, and the civil conspiracy claim against all of the defendants, but **DENY** the Motion to Dismiss with respect to the Eighth Amendment claim against defendant Kennedy, and leave this matter referred to the undersigned for additional proceedings concerning that claim.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation, in which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension

of this time period may only be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

February 1, 2017

Dwane L. Tinsley
United States Magistrate Judge

25