IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES E. ROBERTS,

        Plaintiff,

v.        CIVIL ACTION NO. 2:15-cv-15458

DAVID BALLARD, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are a Motion to Dismiss filed by Defendant David Ballard, (ECF No. 12), and a Motion to Dismiss filed by Defendants Jean Kennedy, Kathi Hill, and Mary Beth Shea (collectively, "the dental Defendants"), (ECF No. 14). By Standing Order filed in this case on November 24, 2015, this action was referred to United States Magistrate Judge Dwane L. Tinsley for findings of fact and recommendations for disposition ("PF&R"). (ECF No. 5.) On February 1, 2017, Magistrate Judge Tinsley filed a PF&R in which he recommends that the Court grant Defendant Ballard's Motion to Dismiss. (ECF No. 19 at 24.) Further, Magistrate Judge Tinsley recommends that the Court grant the dental Defendants' Motion to Dismiss with respect to the Eighth Amendment claims against Defendants Hill and Shea and the civil conspiracy claim against all Defendants, but deny their Motion to Dismiss with respect to the Eighth Amendment claim against Defendant Kennedy. (*Id.*) On February 13, 2017, Plaintiff filed a timely Response and Objection to the PF&R ("Objection"). (ECF No. 20.)

1

For the reasons provided herein, the Court **OVERRULES** Plaintiff's Objection, (ECF No. 20), **ADOPTS** the PF&R, (ECF No. 19), and **GRANTS** Defendant Ballard's Motion to Dismiss, (ECF No. 12). Further, the Court **GRANTS IN PART** and **DENIES IN PART** the dental Defendants' Motion to Dismiss. (ECF No. 14.)

## I.  BACKGROUND

This case involves allegations by Plaintiff Charles E. Roberts against various employees of Mount Olive Correctional Complex ("MOCC"). Plaintiff alleges that throughout June and July of 2015, these Defendants showed a deliberate indifference to a serious medical need concerning dental care and pain treatment he received and that they conspired in furtherance of this unlawful treatment. The Complaint states that, on May 26, 2015, Plaintiff began experiencing "extreme aching in his lower right jaw. Through the following days this pain grew so large and intense, so constant and unrelenting that plaintiff could not sleep, focus on anything else or even chew food." (ECF No. 2 at 3, ¶ 10.) Plaintiff sought and received medical treatment from MOCC's dental clinic on multiple occasions, but he contends that Defendant Kennedy should have prescribed him medication that was more effective. (*See id.* at 8–10, ¶¶ 37–40, 46–47; 12–13, ¶¶ 56–58.) Plaintiff claims to have been in extreme pain for over a month. (*See id.* at 16, ¶ 73.) The facts of the case, as described in Plaintiff's Complaint, are set out in the PF&R. (*See* ECF No. 19 at 1–7.)

On June 30, 2016, Defendant Ballard filed a Motion to Dismiss. (ECF No. 12.) Plaintiff filed his opposition to the motion on July 14, 2016, (ECF No. 17), and no reply was filed. Also on June 30, 2016, the dental Defendants filed their Motion to Dismiss. (ECF No. 14.) Plaintiff filed his opposition to the motion on July 14, 2016, (ECF No. 18), and no reply was filed.

On February 1, 2017, Magistrate Judge Tinsley filed his PF&R, and Plaintiff filed his Objection on February 13, 2017, in which he challenges Magistrate Judge Tinsley's recommendation that this Court grant the dental Defendant's Motion to Dismiss related to the § 1983 conspiracy claim. As such, the PF&R, the Objection, and the two motions to dismiss, are fully briefed and ready for disposition.

## II. LEGAL STANDARD

### A. Standard for Review of the PF&R

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted). However, "[t]he district court cannot artificially limit the scope of its review by resort to ordinary prudential rules, such as waiver, provided that proper objection to the magistrate's proposed finding or conclusion has been made and the appellant's right to de novo review by the district court thereby established." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). In reviewing the portion of the PF&R to which Plaintiff objects, this Court will consider the fact that Plaintiff is acting pro se, and his filings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

*B. Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Allegations "must be simple, concise, and direct," and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In addition to the allegations of the Complaint, the Court will "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Serv. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

### *III.  DISCUSSION*

Plaintiff objects to Magistrate Judge Tinsley's recommendation in the PF&R to dismiss Plaintiff's civil conspiracy claim brought under § 1983.  (*See* ECF No. 20 at 2.)  For the reasons that follow, the Court **OVERRULES** Plaintiff's Objection.

"To establish a conspiracy claim under § 1983, a plaintiff 'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.'"  *Massey v. Ojaniit*, 759 F.3d 343, 357–58 (4th Cir. 2015) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)).  *See also Hampton v. Hanrahan*, 600 F.2d 600, 620–23 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980) (per curiam).  "The proof of a conspiracy to violate the civil rights of another must meet a 'weighty burden,' but to withstand a motion to dismiss, the pleadings must meet only the basic standard" set out in *Twombly*.  *See Chavez v. McIntyre*, 424 F. Supp. 2d 858, 861 (W.D. Va. 2006) (citing *Hinkle*, 81 F.3d at 421).  The Fourth Circuit in *Hafner v. Brown* did not find error in the following jury instruction explaining conspiracy within the context of § 1983:

> If two persons pursue the same object, one performing one part of the act and the other another part of the act so as to complete it, with a view to the attainment of the object to which they are pursuing, this will be sufficient to constitute a conspiracy.  The critical element is whether there was a meeting of the minds to accomplish the unlawful act.

983 F.2d 570, 577 (4th Cir. 1992).

Under Federal Rule of Civil Procedure 12(b)(6), "[a]llegations of 'parallel conduct and a bare assertion of a conspiracy' are not enough for a claim to proceed."  *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (citing *A Soc'y Without A Name v. Virginia*, 655 F.3d

5

342, 347 (4th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556)) (finding that the plaintiff's complaint offered "only conclusory allegations that the Salvation Army conspired with Church in the City, and that is not enough to proceed"). The standard set forth by *Twombly* requires "a plausible suggestion of conspiracy." 550 U.S. at 566. *See Ruttenberg v. Jones*, 283 Fed. App'x 121, 132 (4th Cir. 2008) (finding that the district court properly dismissed plaintiff's § 1983 conspiracy claim because the plaintiff did not allege a common purpose or make specific statements beyond conclusory allegations of conspiracy). As long as a plaintiff can show that the conspirators shared the same objectives, he need not prove that every defendant knew the exact details of the plan or identity of all participants. *See Hampton*, 600 F.2d at 622. A plaintiff must also provide facts sufficient to show that the defendants' actions resulted in the deprivation of a constitutional right. *See Glassman v. Arlington Cty.*, 628 F.3d 140, 150 (4th Cir. 2010).

Here, Plaintiff's Complaint states that Defendants "conspired with one another . . . to formulate, implement and practice customs, policies and procedures at MOCC which injure, oppress, and intimidate Charles Roberts; and also to retaliate and obscure the harm caused against Charles Roberts," which deprived him of his constitutional rights to speak freely, receive "prompt and properly effective medical attention," and be free from cruel and unusual punishment. (ECF No. 2 at 19–20, ¶¶ 81–82.) Plaintiff alleges that the MOCC dental staff initially misdiagnosed the source of his pain because they did not want to issue effective pain management medication. (*Id.* at 20, ¶¶ 83–84.) Further, Plaintiff claims that he angered the dentist, which caused the staff to retaliate by issuing him ineffective medication that they should have known would harm his kidneys and that did cause him "extreme pain through most of a month."[1] (*Id.* ¶¶ 84–85.) The

---

[1] Plaintiff claims at several points throughout the Complaint that he was unable to chew food due to the pain he was experiencing. (*See* ECF No. 2 at 3, ¶¶ 10, 12; 4, ¶ 17; 14, ¶ 64; 17–18, ¶ 79(B).) However, the Court notes that the

6

Complaint provides that Defendants allegedly engaged in the following actions in furtherance of the conspiracy: writing entries in his medical and dental charts, "which would lead any future caretaker to question plaintiff's honesty about his need for medicine for pain;" falsifying a lab report dated July 9, 2015, that shows normal blood serum levels and "insulate[s] defendant(s) from responsibility for plaintiff's kidney damage;" "failing to perform a follow[-]up blood test ordered by Dr. Lye, the facility medical doctor, to be administered on July 17, 2015;" "putting plaintiff in a position" to abuse his prescribed ibuprofen so that MOCC staff would have to file a facility rule violation report against him, (*id.* at 11, ¶ 49), "which was then used as a basis to deny plaintiff all pain medication for his suffering;" and, finally, issuing more ibuprofen to Plaintiff knowing that it would cause damage to his kidneys, (*id.* at 21, ¶ 87(a)–(d)).

The Court finds that Plaintiff has not alleged sufficient facts to show that the various Defendants[2] acted in concert to facilitate a single conspiracy. *See Hinkle*, 81 F.3d at 421. While Plaintiff makes specific factual statements in the Complaint, he fails to connect them to the alleged conspiracy or suggest how the facts involve multiple Defendants acting in concert as opposed to individual Defendants acting alone. For example, Plaintiff alleges that Defendant Shea, an MOCC dental hygienist, told Unit Manager Brenda Brown during a telephone call on June 2, 2015, that there was no prescription in Plaintiff's dental chart. (ECF No. 2 at 6, ¶ 28.) Plaintiff claims that Defendant Shea was able to answer UM Brown without having to put down the phone and ask

---

four invoices that Plaintiff attaches to the Complaint detailing items he purchased from commissary—all of which are dated after his pain allegedly began on May 26, 2015—indicate that besides medicine, Plaintiff purchased various types of potato chips, crackers, cookies, popcorn, and hard candy, such as Skittles, Jolly Ranchers, and a Snickers Bar. (*See* ECF No. 2-1 at 17–20.)

[2] The Court notes that while Plaintiff's Objection disputes Magistrate Judge Tinsley's "recommendation to dismiss the civil conspiracy claim against defendant Kennedy and Jane Doe and/or John Doe medical personnel," (ECF No. 20 at 2), the Complaint alleges that the conspiracy involves all the dental Defendants, Defendant Ballard, "and unknown medical person(s) in the medical clinic at MOCC . . . ." (ECF No. 2 at 19, ¶ 81.)

7

anyone because she "already knew the response to give . . . it was the dental clinic's practice to leave inmate patients to purchase their own medication." (*Id.*)  In this way, Plaintiff claims, Defendant Shea cooperated with "the dental clinic's unconstitutional practices, procedures and customs" that are formulated and implemented by Defendants Kennedy and Hill.  (*Id.* ¶ 29.) Plaintiff's asserted inference is too much of a stretch.  Because Plaintiff was seen in the dental clinic on the same day as this telephone call, (*see id.* at 4, ¶ 15a; 6, ¶¶ 26–28), it is more likely that Defendant Shea simply remembered from Plaintiff's visit whether Defendant Kennedy prescribed him any medication.

      Further, while not tied explicitly to his conspiracy claim, Plaintiff asserts that during the prison lockdown from June 12–16, 2015, he unsuccessfully "requested help with his hurting from a large number of staff to include UM Brenda Brown, UM Josh Ward, UM Richard Bess, Major Rhodes, Lt. Blagg, and every nursing personnel plaintiff saw pass his cell door on the pill distribution rounds through the housing unit."  (*Id.* at 13, ¶¶ 59–60.)  There is no fact showing that these individuals had any knowledge of an alleged conspiracy or were part of any agreement. Additionally, besides Plaintiff's claim that he had to "spend a significant amount of money from his own commissary account" to buy ibuprofen, none of the alleged facts support Plaintiff's conclusory allegation that "the MOCC dental clinic policy and custom of refusing to issue effective pain medication arises from contractual incentives which promote financial gain over inmates' constitutional right to be free of pain . . . ."  (*Id.* at 12, ¶ 56.)

      The last factual allegation that may go toward suggesting a conspiracy involves the blood test allegedly taken from Plaintiff on July 9, 2015.  (*See* ECF No. 2-1 at 25.)  The lab report associated with this blood test shows normal levels of glucose and creatinine unlike the previous

8

blood test taken on June 12, 2015. (*See id.* at 23–25.) While the physician orders attached to Plaintiff's Complaint indicate an order for a repeat blood test to be taken on July 17, 2015, there does not appear to be a similar order for a test on July 9, 2015. (*See id.* at 29–30.) Plaintiff claims that this July 9 blood test was fabricated "as an attempt to minimize the damage to the kidneys of plaintiff by the failure of dental staff first to verify plaintiff had ingested so much ibuprofen bought from the inmate store; and further to ameliorate the responsibility of the caretakers in the dental clinic to lessen the probability of ibuprofen abuse by issuing medication which would be effective against the documented unrelenting pain plaintiff informed defendants was not diminished by ibuprofen." (ECF No. 2 at 17, ¶ 78.) Plaintiff's Complaint does not propose that the allegedly falsified blood test was the result of an agreement between multiple Defendants, nor does he suggest that any one Defendant is responsible for the falsified test. Plaintiff argues in his Objection that the blood test may be the result of an attempt to protect Defendant Shea's position on the West Virginia Board of Dentistry, (*see* ECF No. 20 at 4), but the Complaint does not provide any factual allegations that tie this blood test to any agreement or common objective between Defendants. A review of the alleged facts in the Complaint and the attached exhibits does not provide the Court with enough information to find it plausible that Defendants acted jointly in concert and that an overt act was completed in furtherance of a conspiracy to deprive Plaintiff of a constitutional right. Thus, the claim cannot survive a Rule 12(b)(6) motion.

Even if Plaintiff's allegations were sufficient to establish a plausible § 1983 conspiracy claim, this cause of action is barred by the intracorporate conspiracy doctrine. This defense "holds that acts of corporate agents are attributed to the corporation itself, thereby negating the

multiplicity of actors necessary for the formation of a conspiracy." *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000); *Chavez v. McIntyre*, 424 F. Supp. 2d 858, 861 (W.D. Va. 2006) ("When defendants are all a corporation and its officers, or officers of the same corporation, the intracorporate conspiracy doctrine provides that the defendants are immune from liability due to the lack of 'joint action.'"). The immunity granted by the defense is not destroyed because the entity's agents or employees are sued individually. *See Buschi v. Kirven*, 775 F.2d 1240, 1253 (4th Cir. 1985) (citing *Cole v. Univ. of Hartford*, 391 F. Supp. 888, 893 (D. Conn. 1975) ("Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation.")).

While the intracorporate conspiracy doctrine arose out of a Fifth Circuit decision analyzing an antitrust action, *see Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S. 925 (1953), the defense was "recognized and adopted by [the Fourth Circuit] in *Greenville Publ'g Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)." *Buschi*, 775 F.2d at 1252. The doctrine provides that an employer "cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *See McAndrew*, 206 F.3d at 1036; *see also Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 224 (4th Cir. 2004); *Cohn v. Bond*, 952 F.2d 154, 159 (4th Cir. 1991). Pertinent to this case, the defense has been applied in the civil rights area. *See Buschi*, 775 F.2d at 1251–52 (citing multiple circuit court and district court decisions); *see also United States ex rel. Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 128 (E.D. Pa. 2006) (applying the doctrine in a civil rights discrimination case and holding that the doctrine is not limited to antitrust litigation). For example, a prisoner at Green Haven Correctional Facility in New York sued correctional

officers, a sergeant, and the superintendent of the facility, alleging, among other claims, that the defendants conspired to violate his constitutional rights by acting with deliberate indifference toward his serious medical needs. *See Randle v. Alexander*, 960 F. Supp. 2d 457, 475 (S.D.N.Y. 2013). The court found that the intracorporate conspiracy doctrine was applicable because all the defendants were employees of the New York State Department of Corrections and Community Supervision. *Id.* However, the court concluded that the plaintiff successfully alleged a plausible § 1983 conspiracy claim and that the defendants could not be protected by the intracorporate conspiracy doctrine because the allegations suggested that the defendants were acting outside the scope of their responsibilities as prison guards. *See id.* This is one of two exceptions to the doctrine and is discussed below.

Despite any suggestion within the doctrine's title, courts have consistently applied the intracorporate conspiracy doctrine to officers and agents of public entities. *See Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767–68 (11th Cir. 2000) (employees of a county jail); *Hillard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (members of a local school board); *Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14–cv–003–JAG, 2014 WL 2002227, at *10 (E.D. Va. May 15, 2014) (officers of a regional jail authority); *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004) (agents of a municipal police department). The plaintiff in *Veney* brought an action against two police officers who allegedly conspired to violate his Fourth Amendment rights. *See* 321 F. Supp. 2d at 738–39. The court held that the conspiracy claim failed under the intracorporate conspiracy doctrine "because Officers Ojeda and Jones are agents of a single entity, namely the Leesburg Police Department, and thus cannot legally conspire with one another." *Id.* at 748 (citing *Buschi*, 775 F.2d at 1252–53; *Locus v. Fayetteville State Univ.*, No. 88-2561, 1989 WL

21442, at *1 (4th Cir. Mar. 8, 1989)). The court reaffirmed that "the Fourth Circuit has consistently applied [the intracorporate conspiracy doctrine] in other contexts [than antitrust actions], including actions brought under §§ 1983 and 1985." *Id.* (citation omitted). Similarly, in *Dowdy*, the plaintiff's complaint alleged "that [Pamunkey Regional Jail Authority ("PRJA")] officers—'officials of a public body' acting 'within the scope of their employment'—conspired with one another" to deprive an inmate of his right to medical care. 2014 WL 200227, at *10 (citation omitted). The court found that the jail officers were protected by the intracorporate conspiracy doctrine because "the alleged conspiracy involve[d] only one legally cognizable actor: the PRJA, acting through the decisions and actions of its employees." *Id.* (noting that "the plaintiff's inclusion of each defendant in his or her individual capacity cannot salvage" the conspiracy count).

The Fourth Circuit has recognized two exceptions to the general rule that agents of a principal cannot conspire with one another or the principal itself. First, immunity provided by the intracorporate conspiracy doctrine will not be available if agents perform unauthorized acts in furtherance of a conspiracy. *See Buschi*, 775 F.2d at 1252–3 (citing *Hodgin v. Jefferson*, 447 F. Supp. 804, 807 (D. Md. 1978)); *Chavez*, 424 F. Supp. 2d at 861. "Even if certain acts of officials would constitute corporate action, unauthorized acts of those officials could not avoid a conspiracy charge." *Chavez*, 424 F. Supp. 2d at 861 (citing *Buschi*, 775 F.2d at 1253). For instance, if an entity's officer "ignore[s] the stated policies" and, thus, acts in an unauthorized manner, then an exception to the intracorporate conspiracy doctrine will apply and allegations will be sufficient to state a cause of action. *See Hodgin*, 447 F. Supp. at 807; *see also Dowdy*, 2014 WL 2002227, at *10 ("The Amended Complaint does not allege that PRJA officers acted in anything 'other than .

12

. . the normal course' of their duties. Rather, it alleges only shortcomings and omissions in those employees' performance of their duties—not that they involved themselves in extracurricular, unauthorized activities.").

Second, the doctrine will not protect defendants who have "an independent personal stake in achieving the corporation's illegal objective." *See Greenville Publ'g Co.*, 496 F.2d at 399. Under this exception, "the agent must have a personal interest in the illegal activity 'wholly separable' and independent of his relationship with the corporation." *See United States v. Gwinn*, No. 5:06-cv-00267, 2008 WL 867927, at *25 (S.D. W.Va. Mar. 31, 2008) (citing *Douty v. Irwin Mortgage Corp.*, 70 F. Supp. 2d 626, 633 (E.D. Va. 1999); *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179–80 (4th Cir. 2002)). This second exception will apply when defendant agents stand to benefit personally from the conspiracy's unlawful objective. *See Greenville Publ'g Co.*, 496 F.2d at 399. In *Veney*, the court noted that the plaintiff did not show that the police officers who allegedly conspired with each other "(i) acted with an independent personal stake or (ii) engaged in unauthorized acts." *See* 321 F. Supp. 2d at 748.

Here, Defendants Kennedy, Hill, and Shea, in addition to "Jane Does and/or John Does dental and/or medical personnel at MOCC,"[3] (ECF No. 2 at 1), all are agents of one entity: MOCC. Thus, they are incapable of legally conspiring with one another. *See Buschi*, 775 F.2d at 1252–53. The fact that Defendants are sued individually is not enough to separate Defendants from the legal entity that they represent. *See id.* at 1253. Plaintiff's Complaint claims that he was deprived of certain constitutional rights because of the alleged conspiracy, and the intracorporate

---

[3] While the Complaint includes Defendant Ballard in the conspiracy claim, Plaintiff did not oppose Defendant Ballard's Motion to Dismiss, (ECF No. 17), and the Court adopts the PF&R insofar as it dismisses Defendant Ballard from the action, (*see* ECF No. 19 at 24).

conspiracy doctrine applies to this type of civil rights case. *See id.* at 1251–52 (citations omitted). While the facts alleged in the Complaint often relate to the actions of individual Defendants, the facts are attributed to MOCC acting through its agents. *Cf. Dowdy*, 2014 WL 200227, at *10. Because the individual Defendants' actions are attributed to MOCC, MOCC becomes the only legally cognizable actor in these circumstances. *See id.* Accordingly, no § 1983 conspiracy claim may be brought against MOCC as the entity cannot conspire with itself. *See Veney*, 321 F. Supp. 2d at 748.

The Court does not find that either of the two exceptions to the intracorporate conspiracy doctrine is met. First, Plaintiff's Complaint does not support a finding that any of the agents involved acted in an unauthorized manner. Plaintiff submitted his first inmate medical services request ("MSR") on June 1, 2015, and was readily seen in the dental clinic the next day. (*See* ECF No. 2 at 3–4, ¶¶ 15–15a.) After experiencing continued pain, Plaintiff submitted a second MSR on June 10, 2015, and again was called into the dental clinic the following day. (*Id.* at 7–8, ¶¶ 33, 35.) Before he left the clinic on the second visit on June 11, 2015, Defendant Kennedy advised Plaintiff to "have his pod CO contact the dental clinic the next day if he still hurt." (*Id.* at 9, ¶ 40; ECF No. 2-1 at 7.) Plaintiff expressed his desire to be seen again in the dental clinic the next morning, June 12, 2015, and he was called into the dental clinic that same afternoon. (ECF No. 2 at 10–11, ¶ 43.) Plaintiff submitted a third MSR on June 13, 2015, after being seen in the dental clinic the two previous days, and he claims that this MSR "was ignored by the dental clinic." (*Id.* at 13, ¶ 61.) However, the Complaint and its supporting exhibits do not suggest a policy requiring the dental clinic to see inmates every time they submit an MSR, and Plaintiff does not suggest that a lack of response to an MSR is a breach of MOCC policy, particularly after

14

Plaintiff had been seen in the dental clinic three times in the previous ten days. Subsequently, Plaintiff submitted a fourth MSR on June 28, 2015, and he was seen in the dental clinic again on July 1, 2015. (*Id.* at 15–16, ¶¶ 70, 73.)

Further, the Complaint does not allege any facts suggesting that Defendants acted outside the scope of their employment or that Defendant Kennedy's and her assisting staff's treatment of Plaintiff deviated from MOCC policy. In fact, Plaintiff lodged a formal complaint against Defendant Kennedy with the West Virginia Board of Dentistry on July 10, 2015, based on her conduct and diagnosis of Plaintiff's dental issues, but after investigating the complaint, the Board of Dentistry "found no violation of the standard of care . . . ." (ECF No. 2-1 at 1–8, 16.) Plaintiff's initial grievance seems to have arisen when Defendant Kennedy did not issue him "effective" medication. (*See* ECF No. 2 at 5, ¶¶ 21–24; 8–9, ¶¶ 37–39.) While the Complaint avers that Defendant Kennedy "could have obtained written approval from her pharmacy service to obtain a more effective pain reliever," Plaintiff does not argue that Defendant Kennedy's choice not to do so was an unauthorized act or outside the scope of her employment with MOCC. (*Id.* at 12, ¶ 56. *See also* ECF No. 2-1 at 7–8.) In his letter to the Board of Dentistry, Plaintiff characterizes Defendant Kennedy's actions as "a professional lapse." (ECF No. 2-1 at 2.) At most, Plaintiff argues that Defendants did not perform their duties satisfactorily and that his pain was initially misdiagnosed. Additionally, while the allegedly falsified blood test of July 9, 2015, may be an unauthorized act if not ordered appropriately by a physician, Plaintiff does not attribute the test to any Defendant. Accordingly, the Court cannot find that the Complaint suggests that any Defendant ignored MOCC policies or acted outside the scope of his or her employment related to this blood test.

Lastly, the Court finds that the Complaint does not allege facts suggesting that Defendants had an independent personal stake in furthering the alleged conspiracy. This second exception to the intracorporate conspiracy doctrine requires that a defendant have a personal stake "wholly separable" or independent of that person's relationship with the employer. *See Gwinn*, 2008 WL 867927, at *25. The only facts that may suggest an independent stake are those claiming that Defendant Kennedy's decisions not to prescribe to Plaintiff more effective medication and to note in Plaintiff's dental and medical charts that he abused ibuprofen were retaliatory "for angering her; for his wanting more effective medication; and contending with her about the diagnosis of his pain source . . . ." (ECF No. 2 at 11, ¶ 50.) Even if true, the Complaint does not make a plausible claim that Defendant Kennedy would stand to personally benefit from her actions as part of any conspiracy. These factual allegations are tied directly to Defendant Kennedy's role as MOCC dentist, and the Court does not find that an alleged personal grievance Defendant Kennedy may have had against Plaintiff meets the second exception to the intracorporate conspiracy doctrine. *Cf. Greenville Publ'g Co.*, 496 F.2d at 399.

The intracorporate conspiracy doctrine applies to the case at hand, and neither of the doctrine's recognized exceptions applies to the alleged facts. Thus, although the Court found that a § 1983 conspiracy claim is not plausible on the face of the Complaint, Defendants are immune, nonetheless, from Plaintiff's conspiracy claim under this doctrine. "Just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *McAndrew*, 206 F.3d at 1036 (citation omitted). Accordingly, Plaintiff's § 1983 conspiracy claim is barred.

16

## IV.  CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's Objection, (ECF No. 20), **ADOPTS** the PF&R, (ECF No. 19), and **GRANTS** Defendant Ballard's Motion to Dismiss, (ECF No. 12).  Further, the Court **GRANTS IN PART** the dental Defendants' Motion to Dismiss insofar as it seeks dismissal of the Eighth Amendment claims against Defendants Hill and Shea as well as the civil conspiracy claim against all Defendants, and **DENIES IN PART** the dental Defendants' Motion to Dismiss insofar as it seeks dismissal of the Eighth Amendment claim against Defendant Kennedy.   (ECF No. 14.)

Accordingly, the Court **DISMISSES** David Ballard, Kathi Hill, Mary Beth Shea, and other unnamed Jane Does and/or John Does as named Defendants in this matter.  The Eighth Amendment claim against Defendant Kennedy remains pending.  This case is **RE-REFERRED** to Magistrate Judge Tinsley for further pretrial management and submission of further proposed findings and recommendations for disposition.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:	March 7, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE