IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**CHARLES E. ROBERTS,**

      **Plaintiff,**

v.                                                                                         Case No. 2:15-cv-15458

**DR. JEAN KENNEDY, D.D.S, individually and**
**in her official capacity as MOCC dentist;**

      **Defendants.**

## **PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendant's Motion for Summary Judgment (ECF No. 45). For the reasons stated herein, it is respectfully **RECOMMENDED** that the motion be **GRANTED**.

## **STATEMENT OF UNDISPUTED FACTS**

This matter is proceeding only on the plaintiff, Charles E. Roberts' ("Roberts") Eighth Amendment against Dr. Jean Kennedy, D.D.S. concerning dental care provided to him in June and July of 2015. Based upon the uncontroverted Affidavit of Dr. Kennedy, Roberts' medical records, and Dr. Kennedy's sworn discovery responses, the following fact are taken as undisputed:

On June 1, 2015, Roberts wrote an Inmate Medical Services Request ("MSR") complaining of tooth pain, which, he alleges, developed around May 26, 2015. (Kennedy

Aff., ECF No. 46, Ex. 1 at 1; Pl. Resp., ECF No. 48, Ex. 10). Roberts' MSR was received on June 2, 2015, and he was seen by Dr. Kennedy that same day. (ECF No. 46, Ex. 1 at 1). Dr. Kennedy's Affidavit and the progress notes contained in his medical records indicate that Roberts was complaining about pain in the area of tooth #25, a lower front tooth. (*Id.*; ECF No. 48, Ex. 10). Dr. Kennedy performed an oral evaluation and took an x-ray, which confirmed tooth #25 as the source of pain. Dr. Kennedy extracted tooth #25 and advised Roberts that either or both of the adjacent teeth might need to be removed if his pain persisted. (ECF No. 46, Ex. 1 at 1; ECF No. 48, Ex. 10).

Roberts' commissary records submitted with his Complaint demonstrate that, on May 28, 2015, he purchased 24 acetaminophen tablets. (Compl., ECF No. 2, Ex. 2a). Then, on June 1, 2015, he purchased 24 ibuprofen tablets. (*Id.*, Ex. 2b). He purchased an additional 24 ibuprofen tablets on June 3, 2015, and another 24 ibuprofen tablets on June 10, 2015. (*Id.*, Exs. 2c and 2d). As noted by the defendant, notwithstanding his allegations of severe oral pain, Roberts also purchased cookies, pepperoni, cheddar cheese bars, various chips and popcorn, Snickers bars, Jolly Ranchers, and other candies and pastries during this time period. (*Id.*, Exs. 2a-2d).

On June 10, 2015, Roberts submitted another MSR and was seen by Dr. Kennedy on June 11, 2015. (ECF No. 46, Ex. 1 at 1-2). Although he continued to complain of oral pain, he could not pinpoint the location of such pain. (*Id.* at 2). Dr. Kennedy took two additional x-rays, and determined that removal of tooth #26 was advisable. (*Id.*) At that time, she also prescribed penicillin and ibuprofen with written instructions. (*Id.*) The ibuprofen prescription was for 30-400 milligram tablets with instructions to take no more than two tablets every six to eight hours, with a maximum dosage of eight tablets, or 3,200 milligrams in a 24 hour period. (*Id.*; ECF No. 1, Ex. 7A).

2

On June 12, 2015, Dr. Kennedy received a call from Roberts' housing unit advising her that he was still complaining of oral pain. (ECF No. 46, Ex. 1 at 2). Roberts was immediately seen by Dr. Kennedy, at which time he advised her that he had taken 28 of the 30 ibuprofen tablets she had prescribed for him the day before, which was 350% above the maximum prescribed dosage. (*Id.*) Roberts complained of pain in the area of tooth #29. (*Id.*)

Concerned about the potential of a medication overdose, Dr. Kennedy advised Medical Administration and the on-site physician, Dr. Lye, who evaluated Roberts and reported his misuse of prescription pain medication. (*Id.* at 2-3). Dr. Lye ordered and complete metabolic profile for Roberts and completed his follow-up care.[1]

Once she was satisfied that Roberts was not in immediate danger from his misuse of the prescription analgesics, on June 12, 2015, Dr. Kennedy anaesthetized Roberts and removed tooth #29. (*Id.* at 3). Despite being numb, Roberts continued to complain of pain in that area, which Dr. Kennedy states is "not possible." (*Id.*) Dr. Kennedy's Affidavit indicates that, in light of his overdose of ibuprofen, she could not prescribe any more pain medication that day, and believed that to do so would have been irresponsible. (*Id.*)

On June 28, 2015, Roberts submitted another MSR complaining of increased pain and a "protrusion" in his mouth. (ECF No. 46, Ex. 1 at 3); ECF No. 48, Ex. 12). On July 1, 2015, Roberts was again seen by Dr. Kennedy, who evaluated the extraction areas and noted that they were healing well. (*Id.*) However, she further noted that the tongue side area of the bone where the top of the root of tooth #29 had been removed had not been completely covered with healing tissue. (*Id.*) Thus, Dr. Kennedy smoothed that area

---

[1] Dr. Lye's progress note of June 23, 2015 indicates that Roberts complained of "painful gum – after teeth extraction – pain level is level – not getting worse." (ECF No. 1, Ex. 7B).

3

(which the progress notes refer to as alveoloplasty and curettage) and cleaned out the adjacent soft tissue to promote better healing. (*Id.*) Dr. Kennedy indicated that this is a common occurrence when a lower back tooth is removed and that there was no "protruding bone" as described by Roberts. (*Id.*) Following this procedure on July 1, 2015, Roberts made no further complaints of pain and received no further treatment by Dr. Kennedy therefore.

## **STANDARD OF REVIEW**

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim. *Celotex,* 477 U.S. at 322-23. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Accordingly, summary judgment will generally be granted unless a reasonable

jury could render a verdict for the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 247-48.

A court must not resolve disputed facts or weigh the evidence, and may not make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp.2d 751 (N.D. W. Va. 2000).

## **ANALYSIS**

Roberts' Complaint alleges that Dr. Kennedy was deliberately indifferent to his serious medical needs, a claim generally addressed under the cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution. To sustain an Eighth Amendment claim, a prisoner must show two things: (1) a deprivation that is, objectively, "sufficiently serious" (that is, one that results in the "denial of 'the minimal civilized measure of life's necessities'"); and (2) that a defendant had a "sufficiently culpable state of mind" (that is, "'deliberate indifference' to inmate health or safety"). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Supreme Court rejected an objective test for deliberate indifference.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Thus, a defendant is not liable under the Eighth Amendment unless he or she knew of and disregarded an excessive risk to inmate health or safety. *Id.* at 847. Negligence will not suffice.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852. The burden of demonstrating deliberate indifference to a serious medical need is difficult. It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, **or a condition for which lack of treatment perpetuates severe pain**. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978). [Emphasis added]

6

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Corr. Ctr. Med. Dep't*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).

Furthermore, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

The defendant's Motion for Summary Judgment asserts that Roberts' complaints of dental pain do not constitute a serious medical need and, furthermore, that the evidence of record does not demonstrate that Dr. Kennedy was deliberately indifferent thereto. Rather, the defendant asserts that the evidence of record simply demonstrates a disagreement between Dr. Kennedy and Roberts, who has no substantiation of the appropriate standard of care concerning the appropriate course of treatment under the circumstances. Her Memorandum of Law in support of her Motion for Summary Judgment further states:

> Whether or not Mr. Roberts' dental condition was a serious medical need, there is no genuine issue as to whether or not the dental condition was treated by Dr. Kennedy. His dental condition was simply not ignored nor was it treated with deliberate indifference. Mr. Roberts merely disagrees with the course of treatment determined to be correct and Dr. Kennedy's professional judgment. Mr. Roberts wants to second guess and to have this Court second guess the treatments, procedures and diagnosis of Dr. Kennedy. The Court should not lose sight of the fact that the treatment afforded Mr. Roberts by Dr. Kennedy cured Mr. Roberts of his dental pain.

7

\* \* \*

As the record is now developed, there is absolutely no evidentiary contradiction to Dr. Kennedy's Affidavit as well as the clinical notes made in the progress notes. Mr. Roberts has admitted that he has no dental expert to contradict Dr. Kennedy's treatment of him.

\* \* \*

It is clear from the record and the Affidavit of Dr. Kennedy that the dental problems of Mr. Roberts were treatable with extraction and treatment of the exposed bone. It is also clear from the records and the Affidavit of Dr. Kennedy that her decisions with respect to pain management of Mr. Roberts were also correct. While Mr. Roberts apparently wants to blame Dr. Kennedy for the fact that he abused the prescription pain medication by taking almost an entire [prescription] in one night, it is clear that Mr. Roberts was abusing his pain medications, not only the medications prescribed by Dr. Kennedy, but also the medications he purchased from the commissary.

Dr. Kennedy has provided a valid and reasoned medical judgment as to why she could not prescribe any further pain medication for Mr. Roberts after he had been seen on June 12, 2015, and she learned that he had misused the prior prescribed drugs. The misuse coupled with the fact that the Plaintiff immediately complained of pain following the extraction even though he was still under profound anesthesia lead Dr. Kennedy to the conclusion that she could simply not prescribe any further pain medication to Mr. Roberts.

(ECF No. 46 at 10-12).

Roberts' Response to Defendant's Motion for Summary Judgment (ECF No. 48), as supported by his own Affidavit (ECF No. 48-1), and the Affidavit of Kathy Dillon (ECF No. 43), asserts that there is a genuine issue of material fact concerning whether Dr. Kennedy was deliberately indifferent to his serious medical needs because, notwithstanding the dental procedures performed, she continually refused to treat his complaints of the pain itself. In essence, he challenges her determination that it was irresponsible to provide him with additional pain medication. He states that he "informed Dr. Kennedy that his pain caused him to stand at the cell sink for hours on end, warming

8

a wash cloth and pressing it against his jaw, trying to soothe the severe pain even a little" and that he "informed Dr. Kennedy in detail of his inability to sleep or eat . . . ." (ECF No. 48 at 4-5). Roberts further suggests that the food items he purchased through the commissary during this time were used as "prison currency" or consumed by his cellmate, and that the severity of his pain was demonstrated by his sudden submission of repeated MSRs and his purchase of a large quantity of analgesics from the commissary. (*Id.* at 5). He further contends that "[t]he swelling in his face and jaw were readily visible even to a layperson." (*Id.*)

Roberts further contends that Dr. Kennedy's deliberate indifference to his pain needs is demonstrated by the fact that she twice dismissed him from the dental clinic without any pain medication immediately following the latter two tooth extractions, and that this fact, alone, would sufficiently allow a factfinder to draw an inference of deliberate indifference. (*Id.* at 6). Roberts further disputes Dr. Kennedy's statement that it was "impossible" for him to exhibit pain while he was still numb from the third procedure. His Response further states:

> It is a fact in the record that plaintiff continued to claim, in written MSR and to multiple staff, that he was desperately hurting. Plaintiff submits to the Court that an inference can be drawn from these facts, taken altogether, that the plaintiff was indeed in pain. Plaintiff contends it is unreasonable for the defendant to fail to address the hurting he complained about, directly after having the initial extraction, even more so after the second, and then the third extraction, failed to relieve his hurting. During all of these extractions, plaintiff was pleading with the defendant to give him something to stop the pain. A claim of pain despite heavy anesthetic, from a historically non-complaining inmate patient, can be reasonably inferred to have alerted defendant Kennedy that further extraction of plaintiff's teeth may not resolve the issue. Instead of addressing the pain the defendant took a stance that it was "not possible" for plaintiff to be hurting. Plaintiff requests the summary judgment motion be denied to allow a trial court to determine at what point defendant should have addressed this hurting itself.

(*Id.*) Roberts further questions Dr. Kennedy's medical judgment of prescribing him

9

ibuprofen, after she had previously discharged him without any such medication following the initial tooth extraction, and allegedly after he had informed her of the quantity of analgesics he had already purchased from the commissary, which he claimed had been ineffective in resolving his pain. (*Id.* at 6-7). Roberts claims that these are material facts that raise a genuine issue as to whether Dr. Kennedy had a constitutional duty to treat his pain and refused to do so, which should be determined by a jury. (*Id.* at 8-11).

Roberts further asserts that Dr. Kennedy's refusal to further treat his pain demonstrates an ulterior motive beyond a medical judgment concerning appropriate treatment because the record does not support any long-term abuse of prescription medication, but rather shows only one incident, spurred by Roberts' attempts to combat his continued, untreated severe pain. (*Id.* at 11-13). His Response states:

> [T]he totality of these facts gives inference that the defendant was deliberately choosing to mischaracterize plaintiff's need for medication rather than dispense effective medication, and further that a policy of not dispensing effective pain medication, together with her dismissing plaintiff more than once with no medication immediately after extracting teeth, gives rise to an inference of her culpable state of mind. A reasonable jury could conclude, given the evidence, that defendant Kennedy did persist in what plaintiff repeatedly complained to her was an ineffective pain-management plan and that her refusal to authorize use of stronger pain medication was motivated by Wexford policy or dental care clinic policy and not medical science as applied to the general community. A jury could also conclude that defendant Kennedy left the plaintiff hurting because of her belief, entirely devoid of foundation given plaintiff's history at MOCC, that plaintiff would abuse effective medications. "Evidence of an improper motive can support a conclusion that defendant acted with deliberate indifference." [Snow v. *McDaniel*, 681 F.3d [978, 987 (9th 2012)][2], citing [*George v. Sonoma Cty. Sheriff's Dep't,*] 732 F. Supp. 2d 922, 837 (N.D. Cal. 2010) (citing [*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)].

---

[2] This non-precedential Ninth Circuit case cited by Roberts was overruled on other grounds by the Ninth Circuit in its en banc decision in *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (holding that it is appropriate to consider the resources available to a prison official who lacks authority over budgeting decisions when determining that official's deliberate indifference to serious medical needs).

10

(*Id.* at 12-13).

Roberts' Response further asserts that, if Dr. Kennedy did not trust him to properly take prescribed pain medication on his own, she could have ordered that he be administered such medication under staff observation, but did not. (*Id.* at 14-15). Roberts further claims that "[t]reatment which does not address the complaint of a patient nor in its outcome provide any relief in response to the complaint cannot be treatment that bars liability of defendants." (*Id.* at 16). He further asserts that his "entire need was to obtain relief for the severe pain in his jawbone and face" and that Dr. Kennedy's course of treatment was ineffective and, thus, constitutionally deficient. (*Id.* at 17).

The defendant's Reply brief addresses Roberts' Response as follows:

> Except for claiming that his serious medical condition was pain and not the underlying dental condition which caused his pain, Plaintiff presents nothing new in his response other than the original arguments made in his complaint and other filings in this case. After reading his Response, it is even more clear that Plaintiff simply has a disagreement with Dr. Kennedy over how she treated his complaints of pain. * * * Plaintiff's Response is nothing more than a recitation of his opinions and conclusions with respect to his interpretation of the actions of Dr. Kennedy. The Plaintiff admits that he has no evidence from another dentist or dental expert which contradicts the statements made by Dr. Kennedy in her medical records, answers to interrogatories and Affidavit that the extractions of the teeth performed by Dr. Kennedy were necessary to treat and alleviate his pain by removing the cause thereof.
>
> In addition, Dr. Kennedy has provided her reasoning as to why she would not prescribe further pain medications to the Plaintiff because he had abused the medication dispensed to him following the second tooth extraction. * * * Dr. Kennedy was confronted with direct evidence that Mr. Roberts had abused medication. Mr. Roberts does not deny this abuse. Instead, he offers, as evidence, his opinion that he should have been provided further pain relief medication despite the Affidavit of Dr. Kennedy which sets forth that there were valid medical reasons why this patient should not be prescribed further pain medication.

(ECF No. 49 at 1-2).

It is clear from the undisputed evidence of record that Roberts received prompt evaluation and treatment for his dental conditions by Dr. Kennedy. It is further evident that Robert's allegations that Dr. Kennedy unjustifiably refused to treat his complaints of pain amount to no more than his disagreement with Dr. Kennedy's medical judgment concerning the necessity and propriety of treatment with prescription pain medication, in light of his contemporary misuse of analgesics.

Based upon the undisputed facts, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to establish that Dr. Kennedy was deliberately indifferent to his serious medical needs. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact, and that Dr. Kennedy is entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claim.

## **RECOMMENDATION**

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that presiding District Judge **GRANT** the defendant's Motion for Summary Judgment (ECF No. 45) and dismiss this matter from the docket of the court.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation, in which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension

of this time period may only be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

May 2, 2018

Dwane L. Tinsley
United States Magistrate Judge