# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

CHARLES E. ROBERTS,

        Plaintiff,

v.                                       CIVIL ACTION NO. 2:15-cv-15458

JEAN KENNEDY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Jean Kennedy's ("Dr. Kennedy") Motion for Summary Judgment. (ECF No. 45.) By Standing Order filed in this case on November 24, 2015, this action was referred to United States Magistrate Judge Dwane L. Tinsley for findings of fact and a recommendation for disposition ("PF&R").[1] (ECF No. 5.) On May 2, 2018, Magistrate Judge Tinsley entered a PF&R in which he recommends that the Court grant Dr. Kennedy's Motion for Summary Judgment. (ECF No. 55.) On July 10, 2018, Plaintiff filed a timely Response and Objection to the PF&R ("Objection").[2] (ECF No. 59.) For the reasons provided herein, the Court **OVERRULES** Plaintiff's Objection, (ECF No. 59), **ADOPTS** the PF&R, (ECF No. 55), and **GRANTS** Dr. Kennedy's Motion for Summary Judgment, (ECF No. 45).

---

[1] On February 1, 2017, Magistrate Judge Tinsley entered a PF&R related to two motions to dismiss filed collectively by all Defendants against whom Plaintiff originally brought claims. (ECF No. 19.) This Court overruled Plaintiff's objections, adopted that PF&R recommending the dismissal of all claims in the Complaint except the Eighth Amendment claim asserted against Dr. Kennedy, and re-referred the case to Magistrate Judge Tinsley for further pretrial management and submission of further PF&Rs. (ECF No. 21.)

[2] While objections to the PF&R originally were due by May 21, 2018, Plaintiff filed a motion for an extension of time to file his objections, which the Court granted. (ECF Nos. 56, 57.) The Court extended the objections deadline to July 15, 2018. (ECF No. 57.) Thus, Plaintiff's Objection filed on July 10, 2018, is timely.

1

## I. BACKGROUND

This case involves an Eighth Amendment claim by Plaintiff Charles E. Roberts against Dr. Kennedy, who provides dental care at Mount Olive Correctional Complex ("MOCC"). Plaintiff alleges that Dr. Kennedy showed a deliberate indifference to a serious medical need concerning dental care and pain treatment he received in June and July of 2015. (*See* ECF No. 21 at 2.) Plaintiff claims to have experienced "extreme aching in his lower right jaw" beginning on May 26, 2015. (ECF No. 2 at ¶ 10.) "Plaintiff sought and received medical treatment from MOCC's dental clinic on multiple occasions, but he contends that [Dr.] Kennedy should have prescribed him medication that was more effective." (ECF No. 21 at 2 (citing ECF No. 2 at ¶¶ 37–40, 46–47, 56–58).) While Dr. Kennedy eventually extracted three of Plaintiff's teeth over the course of his examinations to alleviate his pain, Plaintiff alleges that his extreme pain continued for an entire month. (ECF No. 2 at ¶ 73.) The facts of this case are more fully described in the PF&R.[3] (*See* ECF No. 55 at 1–4.)

On November 14, 2017, Dr. Kennedy filed her Motion for Summary Judgment. (ECF No. 45.) Plaintiff filed his response to the motion on December 5, 2017, (ECF No. 48), and Dr. Kennedy replied on December 19, 2017, (ECF No. 49). Magistrate Judge Tinsley filed the PF&R on May 2, 2018, (ECF No. 55), and Plaintiff filed his Objection on July 10, 2018, in which he challenges the PF&R's recommendation that this Court grant the Motion for Summary Judgment, (ECF No. 59). As such, the PF&R, the Objection, and the Motion for Summary Judgment are fully briefed and ripe for adjudication.

---

[3] While the PF&R describes the statement of facts as undisputed, a portion of the Objection argues that there are disputes of material facts, including Dr. Kennedy's motive in her treatment of Plaintiff. (*See* ECF No. 59 at 5.) Nevertheless, the Court incorporates the facts as described in the PF&R because it agrees, as described more fully below, that based on the evidence presented, Magistrate Judge Tinsley's statement of facts is undisputed.

## II. LEGAL STANDARD

### A. Standard for Review of the PF&R

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted). However, "[t]he district court cannot artificially limit the scope of its review by resort to ordinary prudential rules, such as waiver, provided that proper objection to the magistrate's proposed finding or conclusion has been made and the appellant's right to de novo review by the district court thereby established." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). In reviewing the portion of the PF&R to which Plaintiff objects, this Court will consider the fact that Plaintiff is acting *pro se*, and his filings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B. Rule 56 Standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(a). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of

either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production."  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).  Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial."  *Id.* at 323.

### III.  DISCUSSION

Plaintiff objects to Magistrate Judge Tinsley's recommendation in the PF&R that Dr. Kennedy is entitled to judgment as a matter of law.  Specifically, Plaintiff objects to the proposed findings that Plaintiff "failed to establish that Dr. Kennedy was deliberately indifferent to his serious medical needs" and "that there is no genuine issue of material fact" as to his Eighth Amendment claim.  (ECF No. 55 at 12.)  For the reasons that follow, the Court **OVERRULES** Plaintiff's Objection.  (ECF No. 59.)

Plaintiff's Objection involves his Eighth Amendment claim that Dr. Kennedy was

deliberately indifferent to his serious medical needs. (*See id.* at 2–4.) The Eighth Amendment requires that prison officials ensure inmates receive adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103–106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *see also Wilson v. Seiter*, 501 U.S. 294, 303–04 (1991) ("Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*." (alteration in original) (citations omitted)). "The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis[,] and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977).

The Supreme Court has reiterated that a prisoner must meet two requirements in making out a claim of deliberate indifference. *See Goodman v. Runion*, 676 F. App'x 156, 159–60 (4th Cir. 2017) (per curiam) (unpublished opinion) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). "First, the deprivation alleged must be, objectively, sufficiently serious" in that the act or omission "must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted) (citations omitted). Second, the defendant prison official "must have a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted) (citations omitted) (noting that "[i]n prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety"). This second element results in a subjective test regarding the medical provider's "actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("A defendant acts recklessly by

disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position."), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

Notably, negligence of the prison official "in diagnosing or treating a medical condition" does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 106; *see also Farmer*, 511 U.S. at 835 ("We have since read *Estelle* for the proposition that Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))). The Fourth Circuit has held that "[t]he medical provider's disregard of the prisoner's serious medical needs must have been 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Goodman*, 676 F. App'x at 160 (quoting *Miltier*, 896 F.2d at 851). Further, challenges to the provider's medical judgment are not subject to judicial review under § 1983. *See, e.g.*, *De'Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003) (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam)).

The PF&R thoroughly summarizes the briefing associated with Dr. Kennedy's Motion for Summary Judgment. (*See* ECF No. 55 at 7–11.) In short, the motion argues that Plaintiff's alleged dental pain does not rise to the level of a serious medical need and that the evidence before the Court cannot prove a claim of medical indifference. (*See generally* ECF No. 46.) The Court will assume for purposes of this analysis that Plaintiff's medical needs were sufficiently serious.[4] Thus, the inquiry becomes whether Plaintiff has presented enough evidence to create a genuine dispute of material fact regarding whether Dr. Kennedy was deliberately indifferent to

---

[4] "A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain." *Green v. Rubenstein*, 644 F. Supp. 2d 723, 740 (S.D. W. Va. 2009).

those needs.[5]  A timeline of Plaintiff's recent and uncontested dental history at MOCC is relevant to assessing Dr. Kennedy's treatment of Plaintiff's medical needs.

The documents attached to Plaintiff's Complaint and his response to the motion demonstrate that he first submitted an inmate medical services request ("MSR") on June 1, 2015, in which he stated that he was experiencing a painful tooth abscess.  (ECF No. 2-1 at 9, 11.)  Plaintiff was readily seen in the dental clinic the next day.  (*Id.* at 9, 11)  Dr. Kennedy extracted tooth #25 during that visit as oral and x-ray evaluations were consistent with Plaintiff's complaint of the area as a pain source.  (ECF No. 2 at ¶¶ 18, 20; ECF No. 46-1 at 1.)  After Plaintiff's pain continued, he submitted a second MSR on June 10, 2015.  (ECF No. 2-1 at 9, 12.)  Again, Plaintiff was seen by Dr. Kennedy the very next day.  (*Id.*)  Additional x-rays were taken, and Dr. Kennedy removed tooth #26 to alleviate Plaintiff's pain.  (ECF No. 2 at ¶ 35; ECF No. 46-1 at 2.)  Plaintiff was "prescribed and dispensed antibiotic (penicillin VK) and analgesic (ibuprofen) medication" with specific instructions to take two of the thirty 400 milligram tablets of ibuprofen every six to eight hours and no more than eight tablets, or 3,200 milligrams, per twenty-four-hour period.  (ECF No. 46-1 at 2.)  Dr. Kennedy advised Plaintiff to have his housing unit contact the dental clinic the next day if he did not experience any pain relief.  (ECF No. 2-1 at 9; ECF No. 46-1 at 2.)

Indeed, on June 12, 2015, Plaintiff expressed a desire to be seen in the dental clinic, and he was examined by Dr. Kennedy that same afternoon.  (ECF No. 2-1 at 10.)  At that visit, Plaintiff informed the dental clinic staff that he took twenty-eight of the thirty 400 milligram

---

[5] For purposes of this inquiry, Plaintiff's response to the motion and his Objection attempt to distinguish the question of whether Dr. Kennedy provided him adequate dental treatment from the question of whether she properly treated his pain via medication.  (*See* ECF No. 48 at 4–5 ("Plaintiff disputes this because the record as developed shows he indisputably sought defendant's help in feeling less pain, rather than mere dental treatment of the many possible causes of the pain."); ECF No. 59 at 2–4.)  However, the Court does not construe Dr. Kennedy's argument or the PF&R's analysis as considering those issues to be mutually exclusive as Plaintiff seems to believe.  Both questions are part of the same inquiry of whether Dr. Kennedy was deliberately indifferent to Plaintiff's serious medical needs.

tablets of ibuprofen in a twenty-two-hour period, which is 350% greater than the maximum dose of which he was informed both orally and in writing. (ECF No. 46-1 at 2; *see also* ECF No. 2 at ¶ 44.) Considering a possible overdose, Dr. Kennedy reported the ibuprofen misuse to medical administration and the MOCC physician as a precaution. (ECF No. 46-1 at 2; *see also* ECF No. 2-1 at 31.) At the June 12 examination, Dr. Kennedy heavily numbed Plaintiff and removed tooth #29. (ECF No. 46-1 at 3.) Plaintiff was not prescribed more medication on that visit because, according to Dr. Kennedy, "that could have resulted in more serious medical consequences for [Plaintiff] and would be malpractice." (*Id.*)

Plaintiff submitted a third MSR on June 13, 2015, in which he stated that he was not getting relief from the pain and that he "*need*[*ed*] some kind of pain reliever . . . ." (ECF No. 2-1 at 13 (emphasis in original).) Dr. Kennedy responded to the MSR on June 15, 2015, noting that despite Plaintiff's claim that he had never been given medication, she previously gave Plaintiff scheduled doses of ibuprofen that he admitted to abusing during his June 12 visit. (*Id.* (citing *id.* at 10).) Plaintiff was not seen in the dental clinic as a result of the third MSR. Finally, Plaintiff completed a fourth MSR on June 28, 2015, and he was seen in the dental clinic the day the MSR was received, July 1, 2015. (*Id.* at 10, 14; ECF No. 46-1 at 3.) Dr. Kennedy noted during the visit that the three extraction areas were healing well and that there was no "protruding bone" as Plaintiff claimed in his MSR. (ECF No. 2-1 at 14; ECF No. 46-1 at 3.) She "smoothed the small tooth #29 area of uncovered bone and cleaned out the adjacent soft tissue to promote better healing," (ECF No. 46-1 at 3), and Plaintiff admits to feeling relieved from his pain after that procedure, (ECF No. 48-1 at 4).

Shortly after the last visit, Plaintiff wrote a formal complaint letter regarding Dr. Kennedy's care to the West Virginia Board of Dentistry. (ECF No. 2-1 at 1.) Dr. Kennedy

responded to the complaint on August 11, 2015, and outlined her treatment to Plaintiff consistent with her sworn testimony attached to the pending motion. (ECF No. 2-1 at 7–8; ECF No. 46-1.) Upon review and investigation, the West Virginia Board of Dentistry "determined, in accordance with the Board's rules, there [was] not sufficient evidence to warrant further proceedings. The Board found no violation of the standard of care . . . ." (ECF No. 2-1 at 16.)

Despite these uncontested facts, Plaintiff continues to claim that a genuine dispute of material fact exists regarding Dr. Kennedy's treatment and her motive in not prescribing him additional pain medication. Notwithstanding this claim, Plaintiff has presented no evidence besides his own sworn statement to contradict the evidence provided by Dr. Kennedy and the earlier documents attached to the Complaint and his response. Plaintiff provides no other extrinsic evidence supporting the affidavit's assertions, which focuses on the month-long pain he experienced. Thus, the Court must examine whether Plaintiff's affidavit serves to preclude summary judgment in this situation because the Fourth Circuit again has recently rejected "the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'" *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017) (per curiam) (unpublished opinion) (citations omitted).

Once more, the question at this stage of litigation is whether Plaintiff has produced enough evidence to demonstrate that a "dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The only evidence produced by Plaintiff besides the documents originally attached to his Complaint is his own affidavit signed on December 4, 2017.[6] (*See* ECF

---

[6] While the document is not properly notarized, it provides that the statement is made "under penalty of perjury" and is "true to the best of [Plaintiff's] understanding and knowledge." (ECF No. 48-1 at 1.) Thus, "[u]nder Fed. R. Civ. P. 56(e) and 28 U.S.C. § 1746, the filing qualifies as an affidavit," *cf. Williams v. Sielaff*, No. 89-7750, 1990 WL 135721, at *1 (4th Cir. Sept. 20, 1990) (per curiam) (unpublished opinion), and will be considered as such.

No. 48-1; *compare* ECF No. 2-1, *with* ECF Nos. 48-2, 48-3, 48-4, 48-5, 48-6, 48-7.) "Sometimes, the non-movant's affidavit will be insufficient to meet this standard, and other times it will be enough." *Lovett*, 700 F. App'x at 212 (citing *Harris v. Mayor & City Council of Balt.*, 429 F. App'x 195, 198 n.5, 203 (4th Cir. 2011) (unpublished opinion) (concluding that summary judgment was inappropriate, in part because of evidence from non-movant's affidavit); *Coffey v. Chem. Specialties, Inc.*, No. 92-2397, 1993 WL 318886, at *3 (4th Cir. Aug. 20, 1993) (finding plaintiff's "self serving testimony" to be "utterly lacking in foundation" and thus failing to establish a genuine issue of material fact)).

The affidavit here, even when viewed in the light most favorable to Plaintiff, is not enough to create a genuine dispute of fact necessary to his case. The only statements within Plaintiff's affidavit, if any, that are relevant to the second element of his deliberate indifference claim are those statements regarding Dr. Kennedy's alleged improper motive in refusing to provide him effective pain medication. (*See* ECF No. 48-1 at 3 ("I request the Court to let a trial determine if there is evidence that defendant deliberately ignored and refused to act upon the repeated requests I submitted to be free of pain.").) Plaintiff claims that Dr. Kennedy's stated reasoning for not prescribing additional medication on June 12, 2015—because of the amount of ibuprofen consumed by Plaintiff within the previous twenty-four hours—was a pretext for denying him medication to guarantee the continuation of his pain. (*See* ECF No. 48-1 at 2.) Unfortunately for Plaintiff, these statements simply reflect his disagreement with Dr. Kennedy's medical judgment, which is well documented in the record. *See Russell*, 528 F.2d 319. The fact that Plaintiff did not receive medication that he claims would have been effective does not render Dr. Kennedy's decisions judicially reviewable. *See Bowring*, 551 F.2d at 47–48.

According to the evidence, Plaintiff filed four MSRs within a month, and he was seen by

10

Dr. Kennedy on four occasions within the same period. Even after prescribing Plaintiff medication at the second visit, she advised him to seek treatment again the next day if his pain did not subside. He did seek treatment the next day. During that visit, Plaintiff informed the dental staff that he had abused the prescribed medication and, subsequently, complained of pain following an extraction for which he had been completely numbed. While Plaintiff submitted a third MSR on June 13, 2015, Dr. Kennedy wrote that she was out of the office from June 13 to June 16, 2015. (ECF No. 2-1 at 7.) Nonetheless, Dr. Kennedy again saw Plaintiff and provided him additional treatment after the fourth MSR. Apart from the third MSR, which was submitted while Dr. Kennedy was out of the office, Dr. Kennedy saw and treated Plaintiff four times during the month in which he reportedly experienced severe pain, taking steps on each occasion to diagnose and treat the pain source. Clearly, even if the initial procedures and prescribed medication were not wholly effective, Dr. Kennedy did not "fail[] to respond to [Plaintiff's] known medical needs," which could result in an inference of deliberate indifference. *See Sosabee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986); *cf. Green*, 644 F. Supp. 2d at 732.

Further, the West Virginia Board of Dentistry concluded after investigating and examining all the patient notes and x-rays provided by Dr. Kennedy that her treatment of Plaintiff did not violate the profession's standard of care. It would be a stretch to conclude that while Dr. Kennedy's alleged acts or omissions did not violate the profession's standard of care as evaluated by the state board, they nonetheless were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. The Court finds that no reasonable jury could find as much even considering Plaintiff's affidavit.

Finally, when a plaintiff "has named a witness to support [his] claim, summary judgment

11

should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact." *Celotex*, 477 U.S. at 328 (White, J., concurring). Here, Plaintiff has not named an expert witness to support the claims in the Complaint. (*See* ECF No. 46-2.) Plaintiff wrote in response to an interrogatory that the MOCC physician, Dr. Lye, will testify as to Plaintiff's kidney damage, but this does not create an issue of fact as to the dental care provided by Dr. Kennedy. Plaintiff also suggests in his affidavit that prison personnel will testify on his behalf, including "Major Rhodes, Lt. Blagg, UM Brenda Ward, and other staff . . . ." (ECF No. 48-1 at 3–4; *see also* ECF No 48 at 5.) Again, though, the Court does not find that their potential testimonies create an issue of fact regarding the dental care provided by Dr. Kennedy. As detailed above, the evidence offered by Dr. Kennedy coupled with the documents already put into the record by Plaintiff produce no triable issue on the question of whether Dr. Kennedy was deliberately indifferent to Plaintiff's serious medical needs. *Cf. Green*, 644 F. Supp. 2d at 732. Any continued challenge to Dr. Kennedy's treatment of Plaintiff's pain, considering the facts before the Court, is a challenge to her medical judgment, and this Court cannot entertain such a claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (noting that these types of allegations "would, at most, constitute a claim of medical malpractice"). Under these circumstances, Dr. Kennedy is entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim.

IV. CONCLUSION

For the reasons stated above, the Court **OVERRULES** Plaintiff's Objection, (ECF No. 59), **ADOPTS** the PF&R, (ECF No. 55), and **GRANTS** Dr. Kennedy's Motion for Summary Judgment, (ECF No. 45). Accordingly, this case is **DISMISSED** and retired from the docket of this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 10, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE